UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

FRANK SWEET
     Plaintiff,


 -vs-                           Case No.
                                     Hon.

EMPIRE AUTO SOLUTIONS, LLC,
     *d/b/a Empire Consumer Services*
RUBEN GUTIERREZ,
CHARLES T. BUTLER,
BRITTANY RAY, and
SHERRY DOE,
     Defendants.


## <u>COMPLAINT & JURY DEMAND</u>

*Frank Sweet states the following claims for relief:*

## <u>Jurisdiction</u>

1.    This Court has jurisdiction under the Telephone Consumer Protection Act ("TCPA), 47 U.S.C. § 227 and 28 U.S.C. §§ 1331, 1337.

2.    This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

## <u>Parties</u>

3.    The Plaintiff to this lawsuit is Frank Sweet ("Mr. Sweet") who resides in West Bloomfield, Michigan 48323.

4.    The Defendants to this lawsuit are as follows:

a.    Empire Auto Solutions, LLC, which does business as Empire Consumer Services, ("Empire") and which is a California Limited Liability corporation doing business in Michigan and registers the following address with the State of California: 558 N. Towne Ave, Pomona CA 91767.  Empire's registered agent, Ruben Gutierrez, accepts service at the following address: 558 N. Towne Ave, Pomona CA 91767.

b.    Ruben Gutierrez ("Mr. Gutierrez") is a co-founder, manager, and/or officer of Empire.

c.    Charles T. Butler ("Mr. Butler") is a co-founder, manager, and/or officer of Empire.

d.    Brittany Ray ("Ms. Ray") is an employee and/or agent of Empire who has called and deployed several pre-recorded and/or artificial voice messages on Mr. Sweets cellular phone.

e.    Sherry Doe[1] ("Ms. Doe") is an employee and/or agent of Empire who

---

[1] Ms. Doe has called and deployed several pre-recorded and/or artificial voice messages on Mr. Sweets phone but only identifies herself as "Sherry."

2

has called and deployed several pre-recorded and/or artificial voice messages on Mr. Sweets cellular phone.

## Venue

5. The transactions and occurrences which give rise to this action occurred in West Bloomfield, Michigan.

6. Mr. Sweet resides in Oakland County, Michigan.

7. Venue is proper in the Eastern District of Michigan as the conduct and events giving rise to Plaintiff's claims arose in substantial part in this District.

8. Defendants have placed multiple unsolicited phone calls to Plaintiff in Michigan on his cellular phone with a Michigan area code.

9. Defendants spoofed their phone numbers to give consumers the impression that the calls were originating from a local area code.

10. Defendants' prerecorded messages and voicemails to Plaintiff were to solicit auto warranty sales, or otherwise known as Vehicle Service Contracts ("VSCs") for a vehicle in Michigan that would allegedly be serviced in Michigan if the VSC were purchased and if Plaintiff would have a future claim for service to be performed.

## Introduction

11. Empire is engaged in an especially invasive form of advertising Vehicle

3

Service Contracts ("VSCs"): repeated phone calls to consumer cell phones through the use of an Automatic Telephone Dialing System ("ATDS") and deployment of a prerecorded message without consent.

12. Empire's advertising is even more pervasive because Empire fails to at minimum remove from its dialing list all consumer phone numbers registered on the National Do Not Call Registry.

13. Empire is organized as a California limited liability corporation and on its Articles, it offers the following information in the "Describe the type of business or services of the Limited Liability Company" section: Selling Vehicle Service Contracts.   (Exhibit 2 – *California Statement of Information*)

14. Mr. Gutierrez is identified on the California Articles of Empire in the section for "Managers and/or Members."   (Exhibit 2 – *California Statement of Information*)

15. Mr. Butler is identified on the California Articles of Empire in the section for "Managers and/or Members."   (Exhibit 2 – *California Statement of Information*)

16. Mr. Gutierrez manages the operations of Empire, which owns/manages/operates an Automatic Telephone Dialing System ("ATDS") as defined by the TCPA 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(2).

He oversees telephone sales activity of Empire, designed and drafted the procedures and tactics to sell Vehicle Service Contracts on behalf of Empire, controls the day-to-day operations of Empire, indirectly engaged in Vehicle Service Contract sales using the instrumentalities of interstate commerce and an ATDS to deliver prerecorded messages to consumers.

17.    Mr. Butler [2] also manages the operations of Empire, which owns/manages/operates an Automatic Telephone Dialing System ("ATDS") as defined by the TCPA 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(2). He also oversees telephone sales activity of Empire, designed and drafted the procedures and tactics to sell Vehicle Service Contracts on behalf of Empire, controls the day-to-day operations of Empire, indirectly engaged in Vehicle Service Contract sales using the instrumentalities of interstate commerce and an ATDS to deliver prerecorded messages to consumers.

18.    Ms. Ray is an employee and/or agent of Empire, which owns/manages/operates an Automatic Telephone Dialing System ("ATDS") as defined by the TCPA 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(2). She engages in Vehicle Service Contract sales using the instrumentalities of interstate commerce and an ATDS to deliver prerecorded messages to

---

[2] Mr. Butler authored the article *We're All Holding On To Our Vehicles Longer*, that was published to one of the Empire websites, www.empireautosolutions.com, regarding auto repair coverage.   (Exhibit 3).

consumers.

19.    Ms.    Doe    is    an    employee    and/or    agent    of    Empire,    which owns/manages/operates an Automatic Telephone Dialing System ("ATDS") as defined by the TCPA 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(2). She engages in Vehicle Service Contract sales using the instrumentalities of interstate commerce and an ATDS to deliver prerecorded messages to consumers.

20.    Empire conducts business from multiple websites, including:

   a.    www.empireautosolutions.com;

   b.    https://empire-consumer-services.webflow.io; and

   c.    www.empireconsumerservices.com

21.    Empire's Better Business Bureau rating is an "F" which is based on the length of time the business has been operating (2 years), 36 complaints filed against the business, failure to respond to 10 complaints filed against the business, 3 complaints filed against the business which were not resolved, and because the business has failed to resolve underlying cause(s) of a pattern of complaints.   (Exhibit 4 – *BBB Empire Consumer Services*).

22.    On August 30, 2017, Consumer Andrew P. filed the following complaint to Empire's BBB Page:

I've been receiving calls periodically about an expiring warranty offer on my car, including one that came to my voice mail this afternoon. These calls come to my office phone, not my personal phone. I have answered these incoming calls in the past, and if there's actually a live person, I have asked to be removed from their call list. In some cases, they hang up before I can even finish my sentence. I finally got around to doing a little research about the incoming phone number, X-XXX-XXX-XXXX. The voice in the voice mail identifies herself as ******** ***[3], and by all accounts it is clearly a scam. The worst part is that there seems to be no way to stop these irritating and time wasting fraudulent intrusions. Wish somebody could shut them down!
(Exhibit 5 – *BBB Empire Consumer Services Complaints*)

23.    On January 27, 2017, Consumer Chet M. filed the following complaint:

This is a complaint about unsolicited and aggressive telemarketing by a company I have no relationship with using auto dialing equipment. Empire Consumer Services, a company with which I have had no prior relationship, called me several times during the month of January presenting themselves as National Auto Processing Center, in spite of the fact that I am on the National Do Not Call List. Apparently they do not scrub their calling lists against this list as required by Federal Law which, in itself, is a crime. The representative said they were in New York City, but I found their address is in Pomona CA. He refused to give me an address or a phone number that I could call back. He said I could go to their web site, but the web address he gave me is not active. The phone number he called from was 769-235-4920 which only takes you to a recording saying that nobody is available. Moreover, this phone exchange is in Central Mississippi. So they are definitely lying about the NY address or (more probably) spoofing the phone number in order to hide from people trying to call them back. He wanted to sell me an extended warranty on a car I no longer have. He said he could not give me their address because "unfortunately we have had people threaten us." These people REALLY don't want you to know who or where they are so my advice is STAY AWAY!

---

[3] The consumer redacted the name, but given the length of characters and the similarity of this consumers experience to that of Mr. Sweet, Plaintiff believes this consumer is complaining about a caller by the name of Brittany Ray.

(Exhibit 5 – *BBB Empire Consumer Services Complaints*)

24.     On January 18, 2017, Consumer Chandra H. filed the following complaint:

I get repeated calls asking me to renew my vehicle warranty.   The
robot call transfers to an agent and the agent refuses to disclose the
company name.   After repeated requests, some how he slipped the
company name and disconnects immediately.   This company is fraud
and I left the VM on their consumer specialist Charles B[4] asking me to
stop calling.   Don't fall into this trap.
(Exhibit 5 – *BBB Empire Consumer Services Complaints*)

25.     On the Alerts & Actions section of the BBB Page for Empire, the following

message is posted:

**Pattern of Complaints**
According to BBB files, records show that the company has a pattern
of complaints concerning consumers alleging the company is
robocalling consumers who are on the National Do Not Call List.   In
June 2016 the BBB contacted the company in regards to our concerns
about the amount and the pattern of complaints.   Company responded
to pattern 7/13/16 stating they had been using an i[n]dependent
marketing company who has since been terminated as of 7/1/2016.
We will continue to monitor this company for the next six months to
see if the pattern of complaints persists.

4/18/17 The company had informed the BBB they had discontinued this
practice however the BBB is still receiving complaints concerning
customers being contacted despite their presence on the DNC list.
(Exhibit 6– *BBB Empire Consumer Services Alerts & Actions*)

26.     Consumers have also reported their complaints regarding to the company on

various  internet  blogs,  including  800notes.com,  including  an  anonymous

---

[4]  Plaintiff believes "Charles B" to be "Charles Butler", co-defendant.

consumer on August 31, 2017 reported the following complaint about

Defendants with respect to their phone number 855-999-9122[5]:

EXTENDED WARRANTY SCAM – Caller left message
This is the callback number[6] from 201-350-5741
'Hello.  This is Britney Ray.  I am calling you today in regards to your
vehicle.  We have sent you final notices regarding your factory
warranty.  Please call me back at your earliest convenience at 1-855-
999-9122 and ask for Brittney Ray.  Thank you.'
(Exhibit 7 – *800notes.com 855.999.9122, Page 6*).

27.    On September 25, 2017, Consumer Miranda reported her complaint about

Defendants with respect to their phone number 844-213-4104[7]:

(844) 213-4104 – Auto-recording received at 9:40AM PST.  Did not
identify their company name.  Voice message: 'Hello, This is Sherry.
I'm calling you today in regards to your vehicle.  We have sent you
final notices concerning your factory warranty.  Please call me back at
your earliest convenience at 844-213-4104.  Call me today before your
vehicle no longer quali[f]ies for coverage, at (844) 213-4104, and ask
for Sherry."
Phone Number was classified as 'Unknown' but came in from (503)
479-2147.
(Exhibit 8 – *800notes.com 844.213.4104, Page 3*).

28.    On September 26, 2017, Consumer Leanne filed the following complaint

about Defendants with respect to their phone number 844-213-4104:

These idiots call me at least three times a week telling me it's my final
notice.  I could only hope!  One day I actually talked to a person and
they wanted my info.  I said you called me, why don't you tell me?
They hung up.  My car is brand new and still under the manufacturer's

---

[5] Plaintiff has received an identical phone call from Brittany with this as the call-back number.  (See ¶66).
[6] Believed to be referring to (855) 999-9122.
[7] Plaintiff has received an identical phone call from Sherry with this as the call-back number.  (See ¶66).

warranty.   This is clearly a scam and I wish this would stop.
(Exhibit 8 – *800notes.com 844.213.4104, Page 3*).

29.    Consumers have filed dozens of complaints against Empire for similar TCPA
violations.   (Exhibits 4, 5, 6, 7 and 8).

30.    Phone calls to cellular devices can be intrusive, costly and are in violation of
the Telephone Consumer Protection Act ("TCPA").

## Common Facts

31.    In recent years, businesses have increasingly looked to alternative
technologies through which to send bulk solicitations cheaply.

32.    One of the newest forms of such bulk marketing is to advertise to consumers
through the use of an Automatic Telephone Dialing System ("ATDS").

33.    An ATDS allows an entity to place several calls in a much shorter span of
time to consumers, thereby, maximizing an entities productivity, solicitation
success stories, and accordingly, profits.

34.    Empire places calls to consumers using an ATDS.

35.    Empire places these calls conveying a message with an artificial voice or
prerecorded message.

36.    Empire spoofs its phone numbers to appear on consumer phones with local
area codes, to deceive consumers into answering the phone calls, believing

that the calls are originating from a local phone number.

37.    Empire spoofs its phone number to disguise its true identity so that consumers continue to answer their phone calls.

38.    Empire also spoofs its phone number to prevent consumers from identifying them for purposes of securing recourse, such as complaints to the BBB, to the Michigan Attorney General, and the pursuit of litigation.

39.    Plaintiffs' claims arise under the TCPA, a federal statute enacted to prohibit unreasonable invasions of privacy via certain telephone practices.

40.    It is a violation of the TCPA to initiate any telephone call to a person's cellular telephone using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party.   47 U.S.C. § 227(b)(1)(B).

41.    Under the TCPA, as interpreted by the Federal Communications Commission, a person or entity can be liable for calls made on its behalf even if that person or entity did not directly place those calls.

42.    The Federal Communications Commission has explained that its rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations.  *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order*, 10 FCC Rcd. 12391, 12397, Paragraph 13 (1995).

43.  In 2005, the FCC reiterated that a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call.  *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of State Farm. Mutual Automobile Insurance Company for Clarification and Declaratory Ruling, Declaratory Ruling*, 20 FCC Rc. 13664, 13667 Paragraph 7 (2005).

44.  Accordingly, an entity can be liable under the TCPA for a call made on its behalf even if the entity did not directly place the call. Under those circumstances, the entity is properly deemed to have initiated the call through the person or entity that actually placed the call.

45.  The phone calls at issue in this case were made by or for the benefit of Empire. Because these calls were made on behalf of Empire, it is legally responsible to ensure that such calls are compliant with applicable law, including the TCPA, even if Empire did not itself physically dial the call.

46.  Plaintiff brings this complaint against Empire along with its officers, agents, members and employees, Mr. Gutierrez, Mr. Butler and Ms. Ray, to halt Defendants' practice of making unsolicited and autodialed phone calls to his

cellular phone and to obtain redress for his injuries by their conduct.

47.  By placing the phone calls at issue in this complaint, Defendants have caused Plaintiff actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited phone calls, and the monies paid to his wireless carrier for the receipt of such phone calls to his cellular phone.

48.  In response to Defendants' unlawful conduct, Plaintiff files this lawsuit and seeks an injunction requiring Defendants to cease all unsolicited phone calling activities and an award of statutory damages under the TCPA.

## Factual Allegations Relating to Mr. Sweet

49.  Mr. Sweet maintains a cellular phone in order to maintain personal contacts with family, friends, and as a device through which he can seek emergency help.

50.  The service for his cellular phone is via a "cellular telephone service" as described by 47 U.S.C. § 227(b)(1)(A)(iii).

51.  Plaintiff has been on the Federal Do Not Call Registry since 2004.

52.  In or around January 2016, Empire began calling Plaintiff on his cellular phone.

53.  Over a period of nearly two years, Empire has called Plaintiff on a weekly basis, sometimes multiple times a week.

54.    Empire has called Plaintiff more than 100 times.

55.    In the last few months alone, Empire has called Plaintiff on or about the following dates, May 5, 2017; July 7, 2017; July 14, 2017; July 18, 2017; August 25, 2017; September 28, 2017; October 3, 2017; October 4, 2017; October 5, 2017; October 6, 2017; October 9, 2017; October 10, 2017; October 11, 2017; and October 30, 2017.[8]

56.    Defendants placed these calls using an automatic telephone dialing system.

57.    In an effort to sell its products, Empire, through its own call centers or through one or more of its agents or entities that it has contracted with to call consumers, placed multiple pre-recorded and/or artificial voice calls to Mr. Sweet's cellular phone.

58.    Empire called Mr. Sweet to solicit sales of Vehicle Service Contracts and/or Auto Warranties for a Chevrolet Equinox.

59.    Mr. Sweet has never owned a Chevrolet Equinox.

60.    Mr. Sweet does not currently own a Chevrolet Equinox.

61.    In those calls, Defendants conveyed a pre-recorded and/or artificial voice message in order to promote and sell its product and/or services.

62.    When answering Defendants calls, Mr. Sweet would hear "dead air," a brief

---

[8] This is not an all-inclusive list.

pause, and then a pre-recorded message would play.

63.    After waiting on the line, the calls would sometimes connect to a live operator.

64.    When Mr. Sweet would ask the live operator questions about Empire, such as their name and/or their location, the operators would often disconnect the call immediately without answering any of the questions or providing false answers.

65.    Mr. Sweet repeatedly told the callers to stop calling him, that he did not have a Chevrolet Equinox and accordingly was not interested in their services.

66.    When Mr. Sweet could not answer the phone, the calls would go to voicemail and Defendants would leave a pre-recorded and/or artificial voice message where also "dead air," a brief pause, could be heard at the beginning.

67.    Defendants conveyed one of two of the following nearly identical, pre-recorded and/or artificial voice messages to Mr. Sweet repeatedly:

Hello, this is Brittany Ray, I'm calling you today in regards to your vehicle, we have sent you final notices concerning your factory warranty, please call me back at your earliest convenience at 1(855) 999-9122, call in today before your vehicle no longer qualifies for coverage at 1(855) 999-9122 and ask for Brittany Ray, thank you.

Hello, this is Sherry, I'm calling you today in regards to your vehicle, we have sent you final notices concerning your factory warranty, please call me back at your earliest convenience at (844) 213-4104, call in today before your vehicle no longer qualifies for coverage at (844) 213-4104 and ask for Sherry.

15

68. In the last few months alone, Empire has called and left one of those two pre-recorded and/or artificial voice mail messages on Mr. Sweet's cellular phone on or about the following dates: May 5, 2017; July 7, 2017; July 14, 2017; July 18, 2017; and October 3, 2017.[9]

69. These calls presented commercial advertising.

70. Defendants spoofed their phone numbers[10] to local area codes so that on Plaintiffs phone, the calls appeared to originate locally.

71. Some of Defendants spoofed phone calls appeared as the following phone numbers on Plaintiffs phone, (231) 251-7227 (Leland, MI); (248) 458-4404 (Birmingham, MI); (248) 800-3083 (Oxford, MI); (269) 218-3760 (Galesburg, MI); (313) 209-6656 (Detroit, MI); (517) 210-0349 (Potterville, MI); (586) 210-4296 (New Baltimore, MI); and (947) 888-9583 (Clarkston, MI).[11]

72. Plaintiff does not have any relationship with Empire or any other of Empire's authorized dealers or entities which Empire contracts with to contact consumers and never provided express consent to call his cellular phone.

73. Defendants calls were not for an emergency purpose.

---

[9] This is not an all-inclusive list.
[10] See Exhibits 7 and 8 where other consumers report similar experiences.
[11] This is not an all-inclusive list.

16

74.    Plaintiff did not consent to any of these calls.

75.    Plaintiff asked Defendants to stop calling.

76.    Defendants continue to place calls to Mr. Sweet using their automatic telephone dialing system.

77.    Defendants continue to convey messages to Mr. Sweet using an artificial voice and/or a prerecorded message.

78.    The calls from Empire were intrusive, disruptive and annoying.

79.    As a result of Empire's wrongful conduct, Plaintiff has suffered damages.

## COUNT I - Telephone Consumer Protection Act of 1991 ("TCPA") and 47 C.F.R. 16.1200 *et seq*. (All Defendants)

80.    Mr. Sweet incorporates the preceding allegations by reference.

81.    The central business mission of Defendants is to solicit consumers to purchase Vehicle Service Contracts and/or Auto Warranties using the United States mail service, telephone, telegram or other instrumentalities of interstate commerce.

82.    At all times material and relevant hereto, Empire used, controlled, and/or operated "automatic telephone dialing systems" as defined by the TCPA, 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(1).

83.    These Defendants have negligently violated the TCPA, 47 U.S.C. § 227 *et seq.*, in relation to Mr. Sweet.

17

84.    As a result of Defendant's negligent violations of the TCPA, Mr. Sweet may recover statutory damages of $500.00 for each and every call in violation of the statute.

85.    Alternatively, Defendants have knowingly or willfully violated the TCPA in relation to Mr. Sweet.

86.    As a result of Defendants' willful violations of the TCPA, Mr. Sweet may recover statutory damages of up to $1,500 for each and every call in violation of the statute.

## COUNT II – Michigan Home Solicitation Calls Act ("MHSCA") (All Defendants)

87.    Mr. Sweet incorporates the preceding allegations by reference.

88.    Mr. Sweet is a "person" as that term is defined by MHSCA § 445.111(k).

89.    Mr. Sweet is a "residential telephone subscriber" as that term is defined by MHSCA § 445.111(l).

90.    At all times material and relevant hereto, Defendants and their agents placed telephonic calls to Mr. Sweet to sell him their Vehicle Service Contracts and/or Auto Warranties, of more than $25.00.

91.    At all times material and relevant hereto, Defendants and their agents called Mr. Sweet by telephone to solicit him to purchase their services, including Vehicle Service Contracts and/or Auto Warranties within the meaning of

MHSAC § 445.111(m).

92. Mr. Sweet received telephonic calls for solicitation of services, including Vehicle Service Contracts and/or Auto Warranties of more than $25.00 from Defendants while he was at his residence.

93. At all times material and relevant hereto, Defendants and their agents' communications to Mr. Sweet qualify as "home solicitation sales" as that term is defined by MHSCA § 445.111(a).

94. At all times material and relevant hereto, Defendants and their agents are "telephone solicitors" as that term is defined by MHSCA § 445.111(n) and used automated dialing and announcing devices as those terms are defined by MHSCA § 445.111(g).

95. At all times material and relevant hereto, Defendants and/or their agents made telephonic solicitation calls to Mr. Sweet using in whole or in part a recorded message in violation of MHSCA § 445.111 Sec.1a (1).

96. At all times material and relevant hereto, Defendants made telephonic home solicitation calls to Mr. Sweet whereby the person and/or agent calling failed to state the full name of the organization or other person on whose behalf the call was initiated in violation of MHSCA § 445.111 Sec.1b (1).

97. At all times material and relevant hereto, Defendants and/or their agents made

telephonic home solicitation calls to Mr. Sweet whereby the callers intentionally blocked or otherwise interfered with the caller ID function on Mr. Sweets phone in violation of MHSCA § 445.111 Sec.1b (3).

98. At all times material and relevant hereto, Defendants failed to comply with the requirements of MHSCA § 445.111 Sections 1(a) and 1(b) in violation of MHSCA § 445.111 Sec. 1c(f).

99. Defendants knowingly or willfully violated the MHSCA in relation to Mr. Sweet.

100. As a result of Defendants willful violations of the MHSCA, Mr. Sweet may recover statutory damages of up to $250.00 for the violation of the statute and reasonable attorney fees.

## Demand for Jury Trial

101. Mr. Sweet requests a trial by jury of all claims that can be so tried.

## Demand for Judgment for Relief

102. *Accordingly, Mr. Sweet requests that the Court grant:*

a. *An award of actual and statutory damages;*

b. *Attorney fees;*

c. *An injunction requiring Defendants to cease all unsolicited phone calls, and otherwise protect the interests of Mr. Sweet;*

d.    *Treble damages; and*

e.    *Any other relief deemed proper by this Court.*


                              Respectfully Submitted,


                              By:   s/ Sylvia S. Bolos
                              Sylvia S. Bolos (P78715)
                              LYNGKLIP & ASSOCIATES
                              CONSUMER LAW CENTER, PLC
                              Attorney for Frank Sweet
                              24500 Northwestern Highway, Ste. 206
                              Southfield, MI 48075
                              (248) 208-8864
                              sylviab@michiganconsumerlaw.com

Dated: November 14, 2017

21