UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

FRANK SWEET,

    Plaintiff,

-vs-

EMPIRE AUTO SOLUTIONS, LLC, *et. al.*,

    Defendants.

Case No. 2: 17-CV-13699-RHC-APP
Hon. Robert H. Cleland
Magistrate Judge: Anthony P. Patti

## **MOTION FOR ENTRY OF DEFAULT JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), and for the reasons set forth in the brief below, Frank Sweet ("Mr. Sweet" or "Plaintiff") moves this Court for entry of default judgment in the amount of $48,250.00, plus reasonable attorney's fees, against Defendants (1) Empire Auto Solutions, LLC, (2) Origin Warranty, LLC, and their operators and proprietors, (3) Vanessa Gutierrez, (4) James Silva Gutierrez, (5) Ruben Gutierrez, and (6) Charles T. Butler.

                                                Respectfully Submitted,

                                                By:  s/ Sylvia S. Bolos
                                                Sylvia S. Bolos P78715
                                                Ian B. Lyngklip P47173

1

                                                LYNGKLIP & ASSOCIATES,
                                                CONSUMER LAW CENTER, PLC
                                                Attorney for Frank Sweet
                                                24500 Northwestern Highway, Ste. 206
                                                Southfield, MI 48075
                                                (248) 208-8864
Dated: June 13, 2019                  SylviaB@MichiganConsumerLaw.Com

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

FRANK SWEET,

    Plaintiff,

 -vs-

EMPIRE AUTO SOLUTIONS, LLC, *et. al.*,

    Defendants.

Case No. 2: 17-CV-13699-RHC-APP
Hon. Robert H. Cleland
Magistrate Judge: Anthony P. Patti

## BRIEF IN SUPPORT OF
## MOTION FOR ENTRY OF DEFAULT JUDGMENT

### Issues Presented by Motion

*Should the Court enter a default judgment against the Defendants where they have failed to plead or otherwise defend, and the Clerk has entered Default?*

### Principal Authorities Relied Upon

Fed.R.Civ.P.55(b)(2)

## Relief Requested

Frank Sweet hereby moves for entry of default judgment against Defendants (1) Empire Auto Solutions, LLC, (2) Origin Warranty, LLC, and their operators and proprietors, (3) Vanessa Gutierrez, (4) James Silva Gutierrez, (5) Ruben Gutierrez, and (6) Charles T. Butler (collectively, "Defendants"), pursuant to Federal Rule of Civil Procedure 55(b)(2). Mr. Sweet seeks entry of damages in the amount of $48,250.00 for willful violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.111, plus reasonable attorney's fees.

## Procedural History

Mr. Sweet commenced this action on November 14, 2017 for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (R.1) which caused him to suffer damages. (R.1, ¶¶ 41-57 and 61-79.) Mr. Sweet served Charles T. Butler on November 20, 2017 (R.4), and Empire Auto Solutions (R.7) and Ruben Gutierrez (R.8) on December 13, 2017. When they did not answer or otherwise respond to the complaint, Mr. Sweet sought, and the Clerk entered default. (See R.5-R.6 and R.9-R.11.) On March 3, 2018, Mr. Sweet dismissed unserved parties, Brittany Ray and Sherry Doe without prejudice. (R.13.)

In anticipation of filing a motion for default judgment, on March 5, 2018 Mr. Sweet moved for and the Court granted discovery to allow him to establish the

4

volume of calls he received for purposes of liquidating his TCPA damages. (R.15 and R.16.) The Court also permitted Mr. Sweet to engage in discovery to confirm the identity and location of the account holders responsible for those calls at issue. *Id*. Having completed that discovery, on March 14, 2019, Mr. Sweet moved to amend the complaint to add new and affiliated Defendants, James Silva Gutierrez, Vanessa Gutierrez, and Origin Warranty, LLC. (R.21.)

On March 21, 2019, the Court granted that relief and Mr. Sweet filed the First Amended Complaint that same day. (R.22.) Mr. Sweet served James Silva Gutierrez (R.25) and Vanessa Gutierrez (R.26) on April 2, 2019, and Origin Warranty, LLC on April 8, 2019 (R.27). On May 10, 2019, the Clerk entered default against James Silva Gutierrez, Vanessa Gutierrez, and Origin Warranty, LLC. (R.28-R.33.)

Mr. Sweet has served, and the Clerk has defaulted all Defendants. Mr. Sweet has diligently mailed copies of the docket entries. (Exhibit 2 -- Decl. Laura Branco). These Defendants have still refused to respond. Mr. Sweet reasonably believes that these Defendants operate a common joint venture, so it follows that they have all had either direct or constructive notice since November-December 2017.

The time for them to answer or otherwise respond has long since expired. Mr. Sweet now moves for entry of a default judgment.

5

## Law and Argument

Under Fed.R.Civ.P.55, a party may obtain a default judgment where a Defendant fails to answer or otherwise defend the case. Following entry of a default, the party seeking relief must request entry of judgment. If the plaintiff seeks a sum certain, the plaintiff may request that the Clerk of the Court enter the default judgment. In all other cases the plaintiff must move for entry of the judgment by the Court. Fed.R.Civ.P.55(b). Thus, the plaintiff must move for entry of the judgment when she seeks an amount that cannot be determined from the complaint itself. The plaintiff is required to provide proof of all damages sought in the complaint. *See John E. Green Plumbing and Heating Co., Inc. v. Turner Constr. Co.*, 742 F.2d 965, 968 (6th Cir. 1984) ("We recognize that the law 'does not require impossibilities' when it comes to proof of damages, but it does require whatever 'degree of certainty tha[t] the nature of the case admits.'").

## Telephone Consumer Protection Act ("TCPA")

In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, which prohibits calls to a person on his or her cellular telephone, using an autodialer or an artificial or prerecorded message, unless the caller has the prior express consent of the called party. 47 U.S.C. §

6

227(b)(1)(A)(iii). It is a remedial statute, intended to prevent calls "thought to be an invasion of consumer privacy and even a risk to public safety." *Riazi v. Ally Financial, Inc.*, No. 4:17CV1705JCH, 2017 WL 4260847, at *6 (E.D. Mo. Sept. 26, 2017) (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C.R. 1830, 1834 (2012)). Accordingly, the statute should be liberally construed in favor of the consumer. *Mey v. Venture Data, LLC*, 245 F.Supp.3d 771, 775 (N.D.W.Va. 2017).

Millions of Americans find themselves on the receiving end of prerecorded messages, artificial (robo) messages, and text messages transmitted by auto-dialing systems. The FCC receives about half a million complaints a month and in April 2018 there were some 3.4 billion robocalls placed in the United States. (https://www.investopedia.com/terms/t/telecommunicationsconsumeract.asp).

According to FCC Chairman Ajit Pai, "Consumers are fed up with illegal robocalls that disturb their privacy and often pitch scams." (Exhibit 3 -- The Scourge of Illegal Robocalls). In 2017 alone, the FCC proposed over $200 million in fines for spoofing by telemarketers. *Id*. And through early 2018, the FTC has filed 134 lawsuits against 789 companies and individuals for placing billions of unwanted telemarketing calls. *Id*. The Courts have awarded the FTC more than $1.5 billion

7

in judgments – over $121 million which it has collected. *Id.* (See also Exhibit 4 -- FCC Forfeiture Order imposing a $120,000,000 penalty for 96,758,223 illegal spoofed robocalls placed during a 3-month period in 2016). And the United States Senate continues to call upon the FCC to protect the "precious zone of privacy created by the law." (Exhibit 5 -- Letter to Chairman Pai regarding Robocalls).

## **Michigan Home Solicitation Sales Act ("MHSSA")**

The Michigan Home Solicitation Sales Act is the State analogue to the TCPA. Under this statute, "Home Solicitation Sale" is,

> A sale of goods or services of more than $25.00 in which the seller or a person acting for the seller engages in a personal, telephonic, or written solicitation of the sale, the solicitation is received by the buyer at a residence of the buyer, and the buyer's agreement or offer to purchase is there given to the seller or a person acting for the seller.

M.C.L. § 445.111(a). It regulates certain telephone solicitation and prescribes penalties and remedies for unfair or deceptive acts or practices. Specifically, it is unfair or deceptive for a telephone solicitor to,

> (g) Make a telephone solicitation to a consumer in this state who has requested that he or she not receive calls from the organization or other person on whose behalf the telephone solicitation is made.

M.C.L. § 445.111c(1)(g).

8

## Mr. Sweet's Experience

The TCPA limits the use of a variety of telemarketing devices and practices – exactly the type of calls at issue here. Defendants called Mr. Sweet's cellular phone at least 32 times, without consent and without an emergency purpose. (Exhibit 6 – Mr. Sweet's Filtered Version Wireless CDRs). Defendants were not calling to collect a debt; they were generic cold calls to solicit sales. (R.23, ¶¶ 10, 31, 43-45, 47-49, 80-83, 87-89, and 103; See also Exhibit 7 -- Decl. Frank Sweet). Mr. Sweet registered his cellular telephone number on the National Do Not Call Registry on December 16, 2004. (R.23, ¶ 72; See also Exhibit 8 – Do Not Call Registry Confirmation). With each call, Mr. Sweet heard a prerecorded message before being connected to a live representative. (R.23, ¶¶ 83-85; See also Exhibit 7 -- Decl. Frank Sweet). Mr. Sweet told them to stop calling him. (R.23, ¶¶ 87 and 97; See also Exhibit 7 -- Decl. Frank Sweet). When he did not answer, they left automated or prerecorded voicemails on his cellular phone. (R.23, ¶¶ 88-90; See also Exhibit 7 -- Decl. Frank Sweet). Mr. Sweet believes they used an automated telephone dialing system ("ATDS") when they placed these calls. (R.23, ¶¶ 79-80, 83-86, 88-90, 92-93, 98-99, and 104-105; See also Exhibit 7 -- Decl. Frank Sweet). Defendants' conduct constitutes repeat violations of the TCPA.

Similarly, Defendants' conduct also violated the MHSSA. None of the calls at issue, least of all the first call, were "consumer initiated." (Exhibit 7 -- Decl. Frank Sweet). (See *In re Bayless*, 326 B.R. 411, 416 (Bankr. E.D. Mich. 2005), quoting *Brown v. Jacob*, 183 Mich. App. 387, 230, N.W.2d 226(1990)). All of the calls, from the very start, were initiated by the Defendants. (Exhibit 7 -- Decl. Frank Sweet). These Defendants called Mr. Sweet at all hours, both while he was at work, and also at home. (Exhibit 7 -- Decl. Frank Sweet). All of their calls to Mr. Sweet were of a non-emergency nature, to solicit the sale of a good or service, including vehicle service contracts and warranties. (Exhibit 7 -- Decl. Frank Sweet). At all times, Defendants were calling Mr. Sweet to solicit the sale of a good or service of more than $25.00. (Exhibit 7 -- Decl. Frank Sweet).

## Damages Award

**1.** **The Court should award Mr. Sweet statutory damages of $500 per violation.**

Section (b) of the TCPA specifically forbids placing a call to a cellular phone, for a non-emergency purpose, without *prior* consent, using any automated telephone dialing system or an artificial or prerecorded voice. 47 U.S.C. § 227(b)(1)(A)(iii). These Defendants called Mr. Sweet at least 32 times, without consent and even after he told them to stop calling. And because here none of the calls were related to

10

collection of a debt, the exemption for calls made solely to collect a debt (See 47 U.S.C. § 227(b)(1)(A)(iii), "unless such call is made solely to collect a debt owed to or guaranteed by the United States.") does not even apply here, nor have Defendants raised it or carried their burden of proof. *See Ayers v. Receivables Performance Mgmt., L.L.C.*, No. 2:15-CV-12082, 2016 WL 5402962, at *6 (E.D. Mich. Sept. 28, 2016) (collecting cases). As such, each of the calls violated the TCPA.

Subparagraph (b)(3)(B) permits an award of $500.00 in damages *per violation*. It is the Defendant's burden to establish consent, if any, a burden they have woefully failed to carry. *Harris v. World Fin. Network Nat Bank*, 867 F.Supp.21 888, 893 (E.D. Mich. 2012) (Cox, S.)

Mr. Sweet need only plead facts showing the call was to his cell phone (R.23, ¶¶ 73, 80 and 90; See also Exhibit 7 -- Decl. Frank Sweet), by the use of any automatic telephone dialing system and/or leaving an artificial or prerecorded message (R.23, ¶¶ 79-80, 83-85, 88-90, 92-93, 98-99, and 104; See also Exhibit 7 -- Decl. Frank Sweet), and without his prior consent (R.23, ¶¶ 72, 87, 94, and 96-97; See also Exhibit 7 -- Decl. Frank Sweet). *Id*. Pursuant to subparagraph (b)(3)(B) of § 227 Mr. Sweet is entitled to $500 for each of these 32 calls (Exhibit 6 – Mr. Sweet's

Filtered Version Wireless CDRs), or $16,000.00. *Ayers v. Receivables Performance Mgmt., L.L.C.*, at *16.

2. **Defendants knowingly and willfully violated the TCPA.**

Apart from the statutory damages of $500 per violation, the TCPA provides for enhanced damages,

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3). First and foremost, Mr. Sweet's phone number has been registered with the National Do Not Call List since 2004 – a list created to deal with this exact issue, namely, to stop unwanted solicitation calls. (Exhibit 10 – The Do Not Call Registry, Consumer Information). The TCPA and the Telemarketing Sales Rule ("TSR") both feature a safe harbor for entities making telephone solicitations so long as the entities scrub the Do Not Call Registry no more than 31 days prior to the date that any call is made. 47 C.F.R. § 64.1200(c)(2)(i); 16 C.F.R. § 310.4(b)(3). Further, entities are required to also implement a company-specific "do not call list" within a reasonable period of time, but not to exceed 30 days. 47 C.F.R. § 64.1200(d)(3); 16 C.F.R. § 310.4(b)(iii)(A).

Here, Defendants failed to scrub their call list against the Do Not Call Registry. Had they done so; Mr. Sweet would not have received 32 calls over the course of 12 months. (Exhibit 6 – Mr. Sweet's Filtered Version Wireless CDRs). Instead of complying with the requirements attendant to using that type of technology, these Defendants turned on their autodialer and relentlessly called Mr. Sweet's phone. They inundated him with one prerecorded voicemail after another. (R.23 ¶¶ 88-90; See also Exhibit 7 -- Decl. Frank Sweet).

Secondly, even after Mr. Sweet answered the call and waited on the line to talk to a human being and explained to them that he was not interested and that he did not consent to any future disruptions of his work and life – they called him still. (R.23, ¶¶ 87 and 97; See also See also Exhibit 7 -- Decl. Frank Sweet). Plaintiff need not show malicious or wanton conduct for treble damages, but rather only that Defendant's conduct was knowing. *Alea London Ltd. v. American Home Services, Inc.*, 638 F.3d 768, 776 (11th Cir. 2011). Defendants' violations were willful because they continued to call Mr. Sweet to sell him products/services that he did not seek, even after he informed them that he did not want future contact and despite his phone number already being registered with the National Do Not Call Registry. *Harris v. World Fin. Network National Bank*, 867 F.Supp.2d 888, 896 (E.D. Mich. 2012).

13

Here, unlike in *Ayers v Receivables Performance Mgmt., LLC*, the Court need not attribute some mysterious "valid reason" for Defendants' continued calls to Mr. Sweet despite demand that they cease calling him. These Defendants *were not calling to collect a debt*, they were calling to sell goods or services. Mr. Sweet registered his phone number on the National Do Not Call List in 2014 to deter exactly those phone calls. They failed to scrub their call lists against that Registry to exclude the effectively "opted out" consumers. And Mr. Sweet told them to stop and they didn't. Further, Mr. Sweet sufficiently and adequately pled the extensive disruption to his life and provided greater detail in his affidavit. (R.23 ¶¶ 92-101; See also Exhibit 7 -- Decl. Frank Sweet).

And lastly, these Defendants have been sued before for similar conduct, specifically pursuant to use of automated dialing technology, by their own partners in interest. (Exhibit 9 – TYGRO, LLC v James Gutierrez_Legal News). These Defendants had ample notice of the TCPA's proscriptions. *Miller v. Ability Recovery Servs., LLC*, Case No. 1:18-cv-266, at *5-6 (S.D. Ohio Mar. 15, 2019). Rather than incur the cost attendant to conforming with the statute, they persistently use violative practices willfully and with knowledge. For these reasons, enhanced damages are entirely appropriate here. (See *Alea London Ltd. v. American Home Services, Inc.*,

638 F.3d 768, 779 (11th Cir. 2011)) (Finding that the TCPA's treble damages provision falls more on the compensatory than the punitive side.) Accordingly, Defendant's calls willfully violated the TCPA and the Court is well within its authority to award $1,500 per violation.

3. **The Court should award Mr. Sweet statutory damages of $250.00 plus attorney fees pursuant to MHSSA.**

Under the MHSSA, consumers establishing a suffered loss may recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees. M.C.L. § 445.111c(3). Here, Defendants repeatedly called Mr. Sweet on his phone, both night and day. (See also Exhibit 7 -- Decl. Frank Sweet). In addition to disrupting his workday, they invaded his peace and quiet at home. (See also Exhibit 7 -- Decl. Frank Sweet). Mr. Sweet pays for his phone service. (See also Exhibit 7 -- Decl. Frank Sweet). He spent time waiting on the phone for a live representative to answer, so he could explain to them that he did not want their service and communicate his request for the calls to cease. (See also Exhibit 7 -- Decl. Frank Sweet). These Defendants repeatedly sent automated and prerecorded calls to Mr. Sweet's phone, but none ever offered him an option to stop the calls. (See also Exhibit 7 -- Decl. Frank Sweet). Mr. Sweet spent time researching these Defendants online to understand who they were and if there was some alternative way to stop

15

their calls. (See also Exhibit 7 -- Decl. Frank Sweet). Mr. Sweet suffered loss for which the MHSSA affords a remedy. For these reasons, the Court should award Mr. Sweet $250.00 in damages and attorney fees[1] for their violations of the MHSSA.

### 4.     **Plaintiff will provide testimony in support of his requested damages.**

"Where damages are unliquidated a default admits only [the defaulting party's] liability and the amount of damages must be proved." *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (unpublished) (quoting *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995)). The court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). Should the Court deem that a hearing is necessary to ascertain damages, the court may, without violating any federal statutory right to a jury trial, conduct such a hearing[2] or make a referral to determine the amount of damages to enter or effectuate judgment. Fed.R.Civ.P.55(b)(2)(B).

---

[1] Within 28 days of entry of an Order granting damages pursuant to the MHSSA, including attorney fees, Plaintiff's Counsel will file with the Court a Motion for fees.

[2] Plaintiff will make himself available for an evidentiary hearing should the Court so require.

16

## **Conclusion**

In this case, the Clerk has properly entered default against these Defendants. And even after Mr. Sweet filed his complaint, served them, and continued to keep them informed of the docket entries – they ignored him. All told, their conduct both triggering the litigation and throughout the litigation warrants this Court's entry of Default Judgment. Considering their impertinence, judgment in the amount of $48,250.00, plus reasonable attorney's fees to be determined at a later date, is warranted.

Respectfully Submitted,

By:  s/ Sylvia S. Bolos
Sylvia S. Bolos P78715
Ian B. Lyngklip P47173
LYNGKLIP & ASSOCIATES,
CONSUMER LAW CENTER, PLC
Attorney for Frank Sweet
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
SylviaB@MichiganConsumerLaw.Com

Dated: June 13, 2019

## **CERTIFICATE OF SERVICE**

I certify that on June 13, 2019, I will electronically file the document above with the Clerk of Court using the CM/ECF system that will provide notice to all counsel of record. And I will cause to be mailed the foregoing paper to the served Parties and via the Manner identified below:

**Party**                                                  **Manner**

| Party | Manner |
|---|---|
| Charles T. Butler<br>8786 Vinmar Avenue<br>Rancho Cucamonga, CA 91730 | US First Class Mail |
| Ruben Gutierrez<br>1133 South Nantes Avenue<br>Hacienda Heights, CA 91745 | US First Class Mail |
| Empire Auto Solutions, LLC<br>C/O Ruben Gutierrez<br>1133 South Nantes Avenue<br>Hacienda Heights, CA 91745 | US First Class Mail |
| James Silva Gutierrez<br>26 Oak Cliff Drive<br>Pomona, CA 91766 | US First Class Mail |
| Vanessa Gutierrez<br>26 Oak Cliff Drive<br>Pomona, CA 91766 | US First Class Mail |
| Origin Warranty, LLC<br>C/O LegalZoom.com, Inc.<br>101 N. Brand Blvd. 11th Floor<br>Glendale, CA 91203 | US First Class Mail |

                                          Respectfully Submitted,

                                          By:  s/ Sylvia S. Bolos
                                          Sylvia S. Bolos P78715
                                          Ian B. Lyngklip P47173
                                          LYNGKLIP & ASSOCIATES,
                                          CONSUMER LAW CENTER, PLC
                                          Attorney for Frank Sweet
                                          24500 Northwestern Highway, Ste. 206
                                          Southfield, MI 48075
                                          (248) 208-8864
                                          SylviaB@MichiganConsumerLaw.Com

Dated: June 13, 2019