UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

FRANK SWEET,

Plaintiff,

 -vs-

EMPIRE AUTO SOLUTIONS, LLC,
et. al.,

Defendants.

Case No. 2: 17-CV-13699-RHC-APP
Hon. Robert H. Cleland
Magistrate Judge: Anthony P. Patti

## <u>MOTION FOR ATTORNEY'S FEES AND NON-TAXABLE COSTS</u>

For the reasons set forth in the accompanying brief in support, Frank Sweet requests that the Court grant this petition for attorney's fees in the amount of $21,257.50 along with non-taxable costs in the amount of $1,619.27.

Respectfully Submitted,

By: s/ Sylvia S. Bolos
Sylvia S. Bolos P78715
Ian B. Lyngklip P47173
LYNGKLIP & ASSOCIATES,
CONSUMER LAW CENTER, PLC
Attorney for Frank Sweet

24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
SylviaB@ConsumerLawyers.Com

Dated: September 17, 2019

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

FRANK SWEET,

Plaintiff,

  -vs-

EMPIRE AUTO SOLUTIONS, LLC,
et. al.,

Defendants.

Case No. 2: 17-CV-13699-RHC-APP
Hon. Robert H. Cleland
Magistrate Judge: Anthony P. Patti

## BRIEF IN SUPPORT OF
## MOTION FOR ATTORNEY'S FEES AND NON-TAXABLE COSTS

### Issue Presented by Motion

*Whether Mr. Sweet is entitled to an award of attorney's fees and costs*

*reasonably incurred in litigating the matter to judgment.*

### Most Appropriate Authority

**Federal Rules**
Fed.R.Civ.P. 54(d)(2)

**Statutes**
MHSSA M.C.L. § 445.111

1

## Introduction

Frank Sweet, as the prevailing party on his Motion for Default Judgment (R.34 and R.36) brings this motion pursuant to Federal Rule of Civil Procedure 54(d) and the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.111 for an award of attorney's fees in the amount of $21,257.50 and non-taxable costs in the amount of $1,619.27. Counsel has taken great care throughout this litigation to delegate tasks to staff billing at lesser rates, has reviewed and downward adjusted the time billed by 33%, and has been careful to avoid any unnecessary efforts in the prosecution of this matter.

With that as prologue, the time spent prosecuting this case arose largely from one major factor, Defendants hid themselves behind a barrier of PO boxes and false names rendering service time-consuming and expensive. Defendants went to great lengths to hold themselves out as a faceless entity to prevent consumers, like Mr. Sweet, from stopping the harassing calls. That façade caused Plaintiff to file a motion for limited early discovery to secure information from third parties that Defendants sought to conceal – namely who and where they were. With the third-party records in hand, Plaintiff then filed a Motion to Amend the Complaint to name *all* of the necessary parties and later filed and served that First Amended Complaint.

2

Thus, after nearly two years of litigation and nearly 40 docket entries, and dozens of subpoenas served, and ultimately Default Judgment in his favor, Mr. Sweet brings this motion seeking an award of attorney's fees and costs to ultimately bring this matter to a close.

### Summary of Items Billed

Lyngklip & Associates CLIO ..................................................................$21,257.50
Non-Taxable Costs.................................................................................$1,619.27
                                                                                                                   =========
    Total ...............................................................................................$22,876.77

1.  **Background**

    a.    *Nature of Action*

    This fee petition follows entry of default judgment in favor of Mr. Sweet for his claims pursuant to Telephone Consumer Protection Act and Michigan Home Solicitation Sales Act.  On July 24, 2019, Plaintiff's Counsel appeared for the Hearing on the Motion for Default Judgment. (R.35).  None of the Defendants appeared. (R.36).  That same day, the Court granted Plaintiff's Motion, finding that Mr. Sweet had successfully pled and established valid claims pursuant to the Telephone Consumer Protection Act and Michigan Home Solicitation Sales Act. The next day, the Court entered an Order granting Mr. Sweet $48,000.00 for Defendants' 32 willful violations of the Telephone Consumer Protection Act and

$250.00 plus attorney's fees to be decided by the Court for Defendants' violations of the Michigan Home Solicitation Sales Act, against all Defendants, jointly and severally.  (R.36.)

Accordingly, Mr. Sweet seeks an award of attorney's fees and costs as the prevailing party pursuant to the MHSSA.

### b.    *Core Allegations of the Complaint.*

When Mr. Sweet filed the complaint on November 14, 2017, he alleged violations of the TCPA and MHSSA by Empire Auto Solutions, LLC, Ruben Gutierrez, Charles T. Butler, Brittany Ray, and Sherry Doe. (R.1.)  Despite his best efforts, he was unable to identify and locate Brittany Ray and Sherry Doe and accordingly filed a Notice of Voluntary Dismissal without Prejudice as to each on March 3, 2018.  (R.13.)  Following some court-permitted discovery, by March 21, 2019, Mr. Sweet filed his First Amended Complaint and additionally raised claims for violations of the TCPA and MHSSA against Origin Warranty, LLC, Vanessa Gutierrez, and James Silva Gutierrez. (R.23.)

After completing service of each of the Defendants, on June 13, 2019, Mr. Sweet filed his motion for default judgment against: (1) Empire Auto Solutions, LLC, 2) Ruben Gutierrez, 3) Charles T. Butler, 4) Origin Warranty, LLC, 5) Vanessa

Gutierrez, and 6) James Silva Gutierrez.  (R.34.)

At core, Mr. Sweet alleged that these Defendants operated a common-partnership and repeatedly placed auto-dialed calls and deployed pre-recorded messages to his phone to solicit a sale that cost more than $25.00 despite his verbal request that they stop calling and his prior registration with the National Do Not Call Registry. Mr. Sweet never provided consent for the calls in the first place. The calls were initiated by Defendants and none of the calls were of an emergency nature. The calls were placed at all hours, both while Mr. Sweet was at work and at home. Defendants calls violated both the TCPA and the MHSSA and as such, Mr. Sweet is entitled to an award of attorney's fees and costs pursuant to the MHSSA.

### c.   *Service of Process*

The docket makes clear the challenge under which Mr. Sweet labored to identify, locate, and serve the Defendants. These Defendants systematically used alias names, PO boxes, and private website registries to alienate themselves from litigation and service of process.  All told, Defendants' efforts to avoid and evade service caused Mr. Sweet thousands of dollars and more than a year spent to unmask and track them down.  A brief history of service of process follows:

On November 30, 2017, Mr. Sweet effectuated personal service of process of

5

Charles T. Butler upon a member of his household.  (R.4.)

On December 13, 2017, Mr. Sweet effectuated personal service of process of Ruben Gutierrez at his residence and also effectuated service of process of Empire Auto Solutions, LLC upon Ruben Gutierrez as the Registered Agent.  (R.7 and R.8.)

On April 2, 2019, Mr. Sweet personally served James Silva Gutierrez at his residence.  (R.25.)  On that same day, Mr. Sweet also effectuated service of process of Vanessa Gutierrez upon James Silva Gutierrez as a member of her household.  (R.26.)  And on April 8, 2019, Mr. Sweet effectuated service of process of Origin Warranty, LLC upon its registered agent, Legalzoom.com, Inc. (R.27.)

None of these Defendants have filed an Answer or made any other responsive filing.  Plaintiff's Counsel has continued to send forth docket entries to each.  Many of whom have caused the mail to be returned to Plaintiff's counsel following successful service. Establishing that rather than answer the complaint, Defendants have actively gone to efforts to avoid the litigation and caused Plaintiff to expend costs to continue to secure updated address information for each to keep them informed.

**d.**    ***Third Party Discovery***

Also, essential to identifying and locating the necessary parties responsible

6

for Mr. Sweet's harms were several dozen subpoenas seeking account holder information issued to third-party government agencies, telecommunication companies, internet domain companies, and PO Box entities. (Exhibit 2 – Third Party Discovery Recipients). Of those, Plaintiff's Counsel disbursed costs attendant to the following:

| Amount | Attorney Comments | Reference |
|---|---|---|
| $8.50 | New York Attorney General FOIA Production: Request for Complaints against Empire Auto Solutions, LLC and known operators of the same. | Exhibit 3 |
| $98.40 | FTC FOIA Production: Request for Complaints against Empire Auto Solutions, LLC and known operators of the same. | Exhibit 4 |
| $146.00 | FCC FOIA Production: Request for Complaints against Empire Auto Solutions, LLC and known operators of the same. | Exhibit 5 |
| $5.00 | Century Link (Level 3 Communications) Subpoena Production: Request for phone records of Defendant's phone numbers (844) 213-4104 that was hosted by this telecommunications carrier for a portion of the relevant period. Pre-payment Request. | Exhibit 6 |
| $15.83 | GoDaddy Subpoena Production: Request for account holder information for www.autotelgroup.com domain name. | Exhibit 7 |
| $22.25 | LA Registrar for certified copies of fictitious name filing for Auto Tel Group and MVP Guarantee. | Exhibit 8 |
| **295.98** | | |

All of the above-referenced FOIAs, Subpoenas, and Registration requests were necessary to identifying and locating the Defendants.

### e.    *Preservation of Evidence and Private Investigators*

Plaintiff's Counsel attempted to curb costs by investigating the Defendants independently, to no avail.  While the cost-burden of hiring a private investigator initially appeared prohibitive, ultimately, On the Lookout Investigations had at its disposal systems and databases to identify and locate the defendants sooner, thus reducing the litigation time-burden.  Especially where "Ruben Gutierrez" and "Charles Butler" were remarkably common names, the cost-benefit analysis militated in favor of hiring On the Lookout Investigations to identify and locate them both.  The same proved true for Vanessa Gutierrez and James Silva Gutierrez.  And despite hiring On the Lookout Investigations, Sherry Doe and Brittany Ray were never identified and located to effectuate service of process and ultimately Plaintiff voluntarily dismissed each without prejudice.

Plaintiff's Counsel also hired On the Lookout Investigations to research Empire Auto Solutions and identify the state in which it was articled and the states in which it was registered to do business.  Plaintiff's Counsel commissioned similar research attendant to Origin Warranty, LLC.

Plaintiff's Counsel also commissioned private investigator AF Research & Investigation to track down information about James Silva Gutierrez and his

relationship with AutoTel Group for purposes of amending the complaint.  Because the Defendants operated several websites regarding sales of vehicle service contracts and auto warranties, the same type of solicitation calls directed at Plaintiff, Plaintiff's Counsel also hired Page Vault to professionally capture and preserve the content of Defendants' various websites before it could be otherwise destroyed.

Ultimately, both On the Lookout Investigations and AF Research & Investigation were necessary to bringing this matter to default judgment and ensuring the validity of that judgment.  And Page Vault was necessary to protecting the integrity of that judgment for purposes of execution.

| Amount | Attorney Comments | Reference |
|---|---|---|
| $578.00 | Page Vault: Preservation of Defendants' websites for purposes of trial. | Exhibit 9 |
| $220.00 | OTL Investigations: Comprehensive reports to identify and locate for purposes of effectuating service the following Defendants, Empire Auto Solutions LLC (d/b/a Empire Consumer Services, LLC), Ruben Gutierrez, and Charles Butler. | Exhibit 10 |
| $110.00 | OTL Investigations: Comprehensive reports to identify and locate for purposes of effectuating service the following Defendants, Sherry Doe and Brittany Ray. | Exhibit 11 |
| $225.00 | AF Research & Investigation: Research and investigation to identify and locate for purposes of effectuating service Defendant James Gutierrez and background research of Auto Tel Group. | Exhibit 12 |
| $1,133.00 | | |

9

### f.   *Motion to Open Discovery*

On March 5, 2018, Mr. Sweet moved the Court to open discovery to permit Mr. Sweet to secure the records that would establish the volume of calls at issue in order to liquidate his damages in support of a Motion for Default Judgment and to identify and locate additional parties responsible for his harms.  (R.15.)  By that day, Mr. Sweet had already effectuated service of process of Charles T. Butler, Ruben Gutierrez, and Empire Auto Solutions, LLC.  (R.4, 7, and 8.)  But because none had filed an answer or otherwise responded, Mr. Sweet was forced to seek the records necessary to ultimately liquidate his damages and identify any additional responsible parties on his own – information that otherwise would have been available to the aforementioned served Defendants.

On March 8, 2018, the Court granted Mr. Sweet's Motion (R.16) and since then, Plaintiff's Counsel has served nearly three dozen subpoenas in the limited discovery phase to establish Defendants' volume of violative calls to Plaintiff and ultimately establish the basis for Plaintiff's Motion for Default Judgment. (Exhibit 2 -- Third-Party Discovery Recipients Table).

### g.   *Motion to Amend the Complaint*

Mr. Sweet filed his complaint on November 14, 2017. (R.1.) By March 21, 2019, Mr. Sweet had filed a First Amended Complaint (R.23.) The amendment was

10

necessary because Defendants hid behind alias names, anonymous website registries, PO Box addresses, and a string of entity names, some articled and most not.  Further, Defendants also had a disbarred attorney contact Plaintiff's Counsel to discuss the matter.  When Plaintiff's Counsel identified the firm with whom that disbarred attorney was affiliated and contacted Mr. Tony M. Lu, an attorney in good standing with the State of California, Mr. Lu refused to discuss the Defendants or the matter with Plaintiff's Counsel because he was "not admitted to practice in the State of Michigan."  Defendants' gamesmanship added cost and time to an otherwise straightforward matter.

**2.    Mr. Sweet is entitled to an award of reasonable attorney's fees incurred by his Attorney, Sylvia S. Bolos, in the prosecution of this action.**

### a.    *Attorney Fees under the MHSSA.*

Under the MHSSA, consumers establishing a suffered loss may recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees. M.C.L. § 445.111c(3). On July 25, 2019, the Court entered Default Judgment against Defendants and the damage award included $250.00 plus attorney's fees to be decided by the Court in favor of Mr. Sweet for Defendants' violations of the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.111.

11

**b.**     *The Court's fee determination under the Lodestar standard.*

The starting point for this calculation of reasonable attorney's fees award "should be the determination of the fee applicant's 'lodestar,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his [or her] court-ascertained reasonable hourly rate." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir.2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The trial court's exercise of discretion is entitled to substantial deference because the rationale for the award is predominately fact-driven." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir.2008). "This deference 'is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

**c.**     *Plaintiff is entitled to recover additional non-taxable costs as a component of the "Attorney's Fee" award.*

In addition to the fees in this case, the Court should award additional "non-taxable" costs as a component of fees for Plaintiff's counsel. *Bryant v. City of Chicago*, 200 F.3d 1092, 1100 n. 3 (7th Cir.2000); *Save Our Cumberland Mountains, Inc. v. Hodel*, 826 F.2d 43, 54 (D.C.Cir.1987) ("We believe that it would be unduly restrictive to find that neither the general term 'costs of litigation' nor the

term 'attorney's fees' includes incidental expenses of attorneys that are routine to all litigation and routinely billed to private clients."); *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir.1984) (travel expenses).

Under fee shifting statutes, a prevailing plaintiff is not limited to recovery of those costs that would ordinarily be recovered under the federal rules. As such, non-taxable costs would include time for paralegals and staff. *Missouri v. Jenkins*, 491 U.S. 274 (1989), as well as travel and other ordinary expenses that "are typically charged to paying clients by private attorneys." *Davis v. City of San Francisco*, 976 F.2d 1536, 1556 (9th Cir.1992).

As such, the Court should permit these additional fees as itemized in this Motion. (See Sections 1(d) and 1(e) of the instant brief). To identify and locate the Defendants, and as this motion establishes, Plaintiff's Counsel sought account holder information for the phone numbers, websites, and PO Box addresses at issue from several third parties. Plaintiff's Counsel also sought to preserve Plaintiff's own call detail records as evidence of his claims for trial and to also liquidate his damages as well as to preserve evidence of Defendant's conduct, including their websites. To preserver evidence of Mr. Sweet's claims and Defendants' violations, and to secure production in response to a number of FOIAs and Subpoenas seeking account holder

information about the Defendants, as well as entity registration information requests, Plaintiff's Counsel expended $1,619.27.   Accordingly, the Court should include within any award of attorney's fees, an additional $1,619.27 for non-taxable costs.

### d. *The Court should award $21,257.50 in fees to Mr. Sweet's Counsel as a prevailing Plaintiff.*

A calculation of the number of hours reasonably expended can involve consideration of three issues, (1) whether the lawyer actually worked the number of hours claimed, (2) whether the work performed was sufficiently related to the points on which the plaintiff prevailed, and (3) whether the attorney used poor judgment in spending too many hours on some part of the case or by unnecessarily duplicating the work of co-counsel. See *Coulter v. State of Tennessee*, 805 F.2d 146, 150-51 (6th Cir. 1986).

In the course of this litigation, Attorney Bolos and the rest of the Lyngklip & Associates staff have expended over 140.00 hours to resolve this matter.   The attached billing records provide a chronological listing of those hours, identifying the staff member who expended the time and the amount of time expended.  (Exhibit 13 -- Adjusted Billing Records).  The work performed was necessary, reasonably related to the file, and directed at moving the matter through the legal system expeditiously.

   **e.**     ***The Court should grant fees to the prevailing attorney based upon their market rates for the attorneys and support staff involved.***

The party seeking an award of fees bears the burden of demonstrating that the request is reasonable. See *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990).   To determine a reasonable hourly rate for attorney fees, the courts look to the prevailing market rate for similar services of local attorneys with comparable skill, experience, and reputation. *Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989).   In determining compensation, the Court should look to the fair market value of the services provided by the attorney.   The hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience, and skill of the individual attorney.   *Northcross v. Bd. of Educ.*, 611 F.2d 624, 638 (6th Cir. 1979). Against this backdrop, the Court should grant fees at a rate commensurate with the attorney's own actual rate for comparable work. *Jeffboat, LLC v. Director, Office of Workers' Compensation Programs*, 553 F.3d 487, 490 (7th Cir. 2009).

In this case, the billing rate for Attorney Sylvia Bolos reflects her customary billing rate and falls well within the range of customary rates for consumer attorneys in Michigan.  (Exhibit 16, Pages 88-91 and 257-264 – NACA Attorney Fee Survey, Excerpts).  Ms. Bolos, along with her firm, Lyngklip & Associates represented Mr.

15

Sweet through the successful prosecution of his case. Few attorneys regularly handle plaintiff's consumer law claims in Michigan, as evidenced by the attorney enrollment for the State Bar of Michigan Consumer Protection Section (Exhibit 17 -- State Bar of Michigan Section Membership Demographics, Excerpts; See Also, Exhibit 18 -- State Bar of Michigan Billing Rate Summary, Excerpts; Exhibit 16, Pages 88-91 and 257-264 – NACA Attorney Fee Survey, Excerpts). Also evidenced by the Michigan membership roster with the National Association of Consumer Advocates ("NACA"), which is the trade group for consumer protection attorneys. (Exhibit 19 -- NACA Michigan Attorney Roster, Excerpts). Fewer still handle these claims in Federal Court with any degree of regularity. Whereas, Attorney Bolos and the Lyngklip & Associates staff feature a highly focused practice, limited exclusively to the protection of consumers through litigation under several federal and state consumer protection statutes, almost exclusively in Federal Court. (Exhibit 20 -- Declaration of Attorney Bolos; Exhibit 21 -- Declaration of Attorney Lyngklip; Exhibit 22 -- Declaration of Paralegal Branco).

Under the direction of Attorney Lyngklip, the Lyngklip and Associates firm fosters an environment of continued legal education, community involvement and participation in the broader legal communities. *Id*. For the first 30 months of their

employment, each staff member is required to participate in Lyngklip & Associates in-house training seminars[1] given by Attorney Lyngklip.  His Declaration discloses a long history of providing training to attorneys seeks to learn consumer law. Additionally, Attorney Lyngklip has over the years conducted training for opposing counsel, judges, and the Members of the Michigan House of Representatives.  He has appeared numerous times before this Court and believes that this Court is otherwise familiar with his expertise in consumer protection.

Further, each staff member is also required to attend and participate in training offered by consumer-oriented organizations as well as local bar associations and paralegal associations. (Exhibit 20 -- Declaration of Attorney Bolos; Exhibit 22 -- Declaration of Paralegal Branco).  Also, each attorney is also required to attend and participate in nationally sponsored webinars, conferences, lectures, and boot camps – more than 75% of which are consumer-oriented.  (Exhibit 20 -- Declaration of Attorney Bolos).

Attorney Bolos' Declaration establishes that she has been a licensed Attorney

---

[1]Lyngklip & Associate Seminar Topics include but are not limited to: Federal Rules of Civil Procedure, Local Rules, ECOA, FDCPA, TCPA, FCRA, EFTA, Michigan analogue statutes, discovery, depositions, trial practice, trial prep, pre-litigation, office skills, legal writing, and performance enhancement.

in Michigan since 2014 and joined the Lyngklip & Associates firm in 2016. Prior to joining Lyngklip & Associates, she maintained an accomplished and successful career in Accounting, Budget, Program Management, Finance and Banking. Immediately prior to transitioning to the practice of law, she spent seven years within the Department of Defense at TACOM in Warren, Michigan. During her tenure there, she held several senior-level positions, including her Accounting position within the Managerial Accounting Office ("MAO") for the command, as well as her Budget Analyst position within the Program Executive Office ("PEO") for the Ground Combat Systems ("GCS") program. She was also integral to the Base Realignment and Closure ("BRAC") of the Managerial and Budget Accounting Office of the Rock Island Arsenal, including the temporary duty ("TDY") assignment to the Rock Island Arsenal to personally draw down operations and reassign them to TACOM. Prior to her employment with the Department of Defense, Ms. Bolos also spent three years as an in-house Accountant to several privately held corporations, both in Michigan and California. And prior to that, she spent five years in the Banking Industry. All told, her experience apart and aside from litigation, spanning 16 years in total, has uniquely prepared her and developed within her a skillset tailored to litigation of consumer protection matters.

18

As Ms. Bolos continues to hone her expertise in consumer-oriented litigation, she has also earned speaking engagements at national conferences, including the Fair Debt Collection Practices Act Conference of 2016, 2017, and 2018, as well as the upcoming Consumer Rights Litigation Conference of November 2019. In 2018, Ms. Bolos served as a co-chair to the EDMI Federal Bar Association's Rise Committee. And the State Bar of Michigan has also published her article on collecting FDCPA Judgments. And as of recently, Ms. Bolos was appointed to the All Well-Being Service Board.  Also, Ms. Bolos was recently asked to speak again at the Federal Bar Association of the Eastern District of Michigan's Annual New Lawyer Seminar in December 2019 following her successful talk at the same seminar the year prior. (Exhibit 20 – Declaration of Attorney Bolos).

Of the 140.66 hours billed, across six staff members, 63.76 were billed by four paralegals[2], 2.60 hours were billed by Senior Attorney Lyngklip and the remaining 74.30 hours were billed by Associate Attorney Sylvia Bolos. Attorney Bolos' billing constituted 53% of all time billed across all staff members. She has reduced her total billing time by 14.80 hours, a 20% reduction of her time billed.  She has also reduced

---

2 Paralegals Brian Jones, Elizabeth Smith, and Haley Trierweiler all separated from Lyngklip and Associates in late 2018 or early 2019.

the total billed time on the file across all staff members from 140.66 hours to 82.40 hours, a net reduction of 58.26 hours or 41%[3].

The accompanying fee survey of consumer lawyers reveals that the rate requested by Attorney Bolos ($300) is well within the range for practitioners throughout the Midwest for an attorney of similar experience. (See Exhibits 16, 17, and 18). That survey does not – and likely could not – account for the credentials of Plaintiff's Counsel which are well beyond those of the average practitioner. Attorney Bolos' Declaration, as well as those of Senior Attorney Lyngklip and Senior Paralegal Branco, along with the fee survey support the requested billing rates. Accordingly, Mr. Sweet requests that the Court grant fees at the nominal billing rates set forth in this petition.

    **d.**     *The lodestar calculation yields a reasonable attorney's fee in light of Defendants' tactics to avoid detection and willful ignorance of this litigation.*

The insistence of Defendants to evade service and ignore this litigation has caused Plaintiff's Counsel to expend a great deal of time and money on bringing this

---

3 Plaintiff's Counsel has ensured that time spent on preparing the instant Motion for Attorney's Fees and the contemporaneously filed Bill of Costs to the Clerk was not included in the fee award request or factored into the billing reduction calculations. Plaintiff's Counsel has expended more than 15 hours in the preparation of the Motion for Attorney's Fees and the Bill of Costs.

matter to a close. In support of this motion, Plaintiff's Counsel has provided a detailed log of all of the time billed on this file, in chronological order, and identified the biller of that time. (Exhibit 13 – Adjusted Billing Records). That exhibit reflects an appropriate distribution of work allocated to Staff and supervised by the managing attorney on the file, Sylvia Bolos. These exhibits also establish that Senior Attorney Lyngklip was an infrequent biller on the file and took on an advisory role appropriate for his experience and higher billing rate. The requested rates are reasonable and appropriate in light of the extraordinary efforts by which Defendants disguised their identities and locations. Accordingly, the Court should find the adjusted billed time of 82.40 hours reasonable and award a lodestar amount consistent with the billing rates requested.

**3.    Plaintiff's Counsel has made appropriate adjustments to reflect billing discretion to render the bill reasonable.**

While the reasonable rate multiplied by the reasonable hours renders a presumptively correct fee, case law yet requires Counsel to exercise billing discretion. *Hensley*, supra. In cases such as these that extend over multiple court appearances, motions for early discovery and to later to amend the pleadings, the resulting bill – as well as the fee litigation – may take extraordinary time. And while the interest of maintain an appropriate balance of time expended on the fee petition

21

(see *Coulter, supra*, limiting fees expended on the fee petition), given the time spent on the file and to ensure the Court has before it a well itemized and audited record, Plaintiff's Counsel has engaged in line-by-line review of the billing in this case.

Plaintiff's Counsel has provided a detailed analysis by Position and Staff Member of the billed time reduction (Attorney Bolos' billed time reduced by 20%, Attorney Lyngklip's billed time reduced by 62%, See Exhibit 14 – Adjusted Billing Records, Percent Reduction by Position and Staff Member). And Plaintiff's Counsel has provided a detailed analysis by Staff Member of the each staff members total time billed to the file and the percentage of their time billed to the file (Attorney Bolos' billed time of 74.3 hours represented 53% of the time billed, Attorney Lyngklip's billed time of 2.6 hours represented 2% of the time billed, See Exhibit 15 – Adjusted Billing Records, Percent Time Billed by Staff Member).

Plaintiff's discretionary billing amounted to a reduction in the amount billed from $31,884.00 to $21,257.50 – a net reduction of $10,626.50 or 33%.  Plaintiff's billing reduction reflects appropriate billing discretion and provides the Court a reasonable check on the overall amount of this petition.

## Conclusion

In this case, Plaintiff's Counsel expended more than 140.66 hours in bringing this case forward to a conclusion - not including time spent on preparation of this brief or anticipated time at the attorney fee hearing.  Plaintiff's Counsel has engaged in a line-by-line review of the billing records and appropriately reduced the billed time for purposes of this fee petition down to 82.40 hours.  Accordingly, Mr. Sweet requests a fee award of $21,257.50 in attorney's fees and $1,619.27 in non-taxable costs.

Respectfully Submitted,


By:  s/ Sylvia S. Bolos
Sylvia S. Bolos P78715
Sylvia Bolos P78715
LYNGKLIP & ASSOCIATES,
CONSUMER LAW CENTER, PLC
Attorney for Frank Sweet
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
SylviaB@ConsumerLawyers.Com

Dated: September 17, 2019

## CERTIFICATE OF SERVICE

I certify that on September 17, 2019, I will electronically file the document above with the Clerk of Court using the CM/ECF system that will provide notice to all counsel of record. And I will cause to be mailed the foregoing paper to the served Parties and via the Manner identified below:

| Party | Manner |
|---|---|
| Charles T. Butler<br>8786 Vinmar Avenue<br>Rancho Cucamonga, CA 91730 | US First Class Mail |
| Ruben Gutierrez<br>1133 South Nantes Avenue<br>Hacienda Heights, CA 91745 | US First Class Mail |
| Empire Auto Solutions, LLC<br>C/O Ruben Gutierrez<br>1133 South Nantes Avenue<br>Hacienda Heights, CA 91745 | US First Class Mail |
| James Silva Gutierrez<br>26 Oak Cliff Drive<br>Pomona, CA 91766 | US First Class Mail |
| Vanessa Gutierrez<br>26 Oak Cliff Drive<br>Pomona, CA 91766 | US First Class Mail |
| Origin Warranty, LLC<br>C/O LegalZoom.com, Inc.<br>101 N. Brand Blvd. 11th Floor<br>Glendale, CA 91203 | US First Class Mail |

Respectfully Submitted,

By:  s/ Sylvia S. Bolos
Sylvia S. Bolos P78715
Sylvia Bolos P78715
LYNGKLIP & ASSOCIATES,
CONSUMER LAW CENTER, PLC
Attorney for Frank Sweet
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
SylviaB@ConsumerLawyers.Com

Dated: September 17, 2019

25